UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

       Plaintiff,      **MEMORANDUM & ORDER**

  -against-          15-CV-6505 (NGG) (PK)

LX FOOD GROCERY INC., LUIS A.
REINOSO, and ALTAGRACIA DIAZ,

       Defendants.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff J & J Sports Productions, Inc., initiated this action on November 12, 2015, asserting seven claims under the Federal Communications Act of 1934 (the "Act"), 47 U.S.C. §§ 605 and 553, against Defendants LX Food Grocery Inc. (the "Defendant Establishment"), and Luis A. Reinoso and Altagracia Diaz (the "Individual Defendants"). (Compl. (Dkt. 1).) Before the court is Plaintiff's Motion for Default Judgment. (Mot. for Default J. (Dkt. 10).) For the reasons stated below, the Motion is GRANTED IN PART AND DENIED IN PART. The court AWARDS Plaintiff $2,687.50 in damages and costs against the Defendant Establishment.

I.  BACKGROUND

 A.  **Factual Allegations**

Because the Defendants have defaulted, the court "is required to accept all of [Plaintiff's] factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiff entered into a closed-circuit television license agreement whereby Plaintiff received exclusive rights to exhibit and sublicense the September 14, 2013, World Boxing Council Light Middleweight Championship Fight Program (the "Event"). (Compl. ¶ 7.) The

1

transmission of the Event was electronically coded such that it could only be received using special decoding equipment. (Id. ¶ 12.) Establishments that contracted with Plaintiff—or with Plaintiff's sublicensee, G & G Closed Circuit Events, Inc.—were entitled to televise the Event, and were provided with the necessary decoding equipment. (Id. ¶¶ 13-14.)

The Defendant Establishment is a corporation organized under the laws of New York and operating in Corona, New York, with the Individual Defendants as its officers, directors, shareholders and/or principals. (Id. ¶ 5.) Defendants never contracted with Plaintiff to screen the Event. (Id. ¶ 13.) Nonetheless, on September 14, 2013, Defendants intercepted the interstate communication of the Event and screened it within the Defendant Establishment. (Id. ¶ 15.) An auditor observed that five patrons were present in the Defendant Establishment during the screening of the Event. (Audit Report of Cosmo Lubrano (Ex. A, Mem. in Supp. of Mot. for Default J.) (Dkt. 11-1).)

### B. Procedural History

Plaintiff's Complaint was filed in this court on November 12, 2015 (Compl.), and service was properly executed on each of the Defendants in January 2016 (Summons (Dkt. 5); Summons (Dkt. 6); Summons (Dkt. 7)). Defendants failed to appear or answer. On March 25, 2016, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Entry of Default (Dkt. 9).) Plaintiff moved for default judgment on June 13, 2016, seeking an order of default judgment awarding statutory damages, enhanced damages, and litigation costs (exclusive of attorney's fees). (See Mot. for Default J.; Mem. in Supp. of Mot. for Default J. ("Pl.'s Mem.") (Dkt. 11).)

## II. DISCUSSION

Plaintiff asserts claims under Sections 605 and 553 of the Federal Communications Act. "However, the law in this Circuit is clear that a plaintiff may recover under only one of [those]

2

statutes." Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases). The court will begin with Section 605, which allows for greater recovery than Section 553. See id. Because the court finds that Plaintiff is entitled to default judgment against the Defendant Establishment under Section 605, the court does not reach Plaintiff's remaining claims under Section 553.

### A. Legal Standards

#### 1. Default Judgment

"[B]efore a district court enters a default judgment, it must determine whether the allegations in [the] complaint establish the defendant's liability as a matter of law." Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order) (citing Finkel, 557 F.3d at 84). In other words, the well-pleaded allegations must be "sufficient to state a cause of action." Id. If a cause of action has been stated, motions for default judgment are "left to the sound discretion of a district court." Palmieri v. Town of Babylon, 277 F. App'x 72, 74 (2d Cir. 2008) (summary order) (quoting Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999)).

For the purposes of default judgment, the court accepts as true all factual allegations in the complaint, except those related to damages. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The court must be satisfied that Plaintiff has met the burden of proving damages to the court with "reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Although requests for damages are usually established by the plaintiff in an evidentiary hearing, the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence. Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

2. The Federal Communications Act of 1934

Section 605(a) of the Act provides, in relevant part that, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). If Plaintiff successfully alleges that the Defendant Establishment violated Section 605, then Plaintiff may seek to impose liability on the Individual Defendants under the theories of "contributory infringement" or "vicarious liability." Softel, Inc v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). Contributory infringement occurs when a defendant authorized the violations. Id. (citing Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984)). Vicarious liability occurs when a defendant had a "right and ability to supervise that coalesced with an obvious and direct financial interest." Id. (alterations omitted) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

B. **Liability**

1. The Defendant Establishment (LX Grocery Food Inc.)

The court finds that Plaintiff's well-pleaded allegations state a valid claim against the Defendant Establishment under Section 605. Plaintiff held an exclusive license to sublicense and broadcast the Event. (Compl. ¶ 7.) The only way the Defendant Establishment could have broadcast the transmission without violating Section 605(a) would have been to contract with Plaintiff to receive the necessary electronic decoding equipment and satellite coordinates. (Id. ¶ 14.) Despite failing to contract with Plaintiff, Defendants screened the event within the Defendant Establishment on September 14, 2013. (Id. ¶ 15.) Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a). See J & J Sports Prod., Inc. v. McAdam, No. 14-CV-5461 (PKC) (CLP), 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015); J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest.,

4

No. 13-CV-04299 (FB) (VMS), 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014); J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc., No. 13-CV-5068 (RJD), 2014 WL 2879868, at *4 (E.D.N.Y. May 7, 2014), report & recommendation ("R&R") adopted, 2014 WL 2879890 (E.D.N.Y. June 24, 2014); J& J Sports Prods., Inc. v. Tellez, No. 11-CV-2823 (SMG), 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011); J&J Sports Prods., Inc. v. Shafik, No. 10-CV-3809 (ARR) (JMA), 2011 WL 1240559, at *1 (E.D.N.Y. Feb. 11, 2011), R&R adopted, 2011 WL 1218343 (E.D.N.Y. Mar. 30, 2011). But see J & J Sports Prods., Inc. v. El Ojo Aqua Corp., No. 13-CV-6173 (ENV) (JO), 2014 WL 4700014 (E.D.N.Y. Aug. 29, 2014), R&R adopted, 2014 WL 4699704 (E.D.N.Y. Sept. 19, 2014).[1]

### 2. The Individual Defendants (Luis A. Reinoso and Altagracia Diaz)

Plaintiff also seeks to hold Individual Defendants Luis A. Reinoso and Altagracia Diaz individually liable under Section 605 in their capacities as officers, directors, shareholders, or principals of LX Food Grocery Inc. Plaintiff makes no allegation of contributory liability, proceeding instead under a theory of vicarious liability. The court finds that Plaintiff has failed to establish that either of the Individual Defendants was vicariously liable.

Plaintiff alleges that both Individual Defendants "had a right and ability to supervise the infringing activities . . . on the night the 'Event' was shown at Defendant's Establishment," and that they "had an obvious and direct financial interest in the exploitation of the copyrighted

---

[1] In El Ojo Aqua, Magistrate Judge Orenstein considered a similar factual scenario involving the same plaintiff. Judge Orenstein noted that the plaintiff's evidence included an advertisement listing a separate entity, G & G Closed Circuit Events, LLC, as the official closed-circuit provider. 2014 WL 4700014, at *3. That advertisement "flatly contradicts the Complaint's allegation of J & J's exclusive rights," and so Judge Orenstein found that Plaintiff's well-pleaded allegations failed to state a cause of action. Id. Plaintiff has addressed that pleading defect in the present action. In El Ojo Aqua, the complaint made no reference to G & G's relationship with J & J. Id. In the present action, by contrast, the Complaint states that Plaintiff "utilized the services of G & G Closed Circuit Events, LLC to handle its marketing and sales." (Compl. ¶ 9; see also id. ¶ 10 ("[T]he Event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by J & J Sports Productions, Inc. and/or it's sub-licensee G & G Closed Circuit Events, LLC.").)

materials." (Compl. ¶ 16.) The Supreme Court has cautioned, however, that this type of "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The Complaint further alleges that the Individual Defendants are listed as the Principal of LX Food Grocery Inc. on the liquor license on file with the New York State Liquor Authority. (Compl. ¶ 16.) The court need not decide whether this allegation sufficiently establishes a "right and ability to supervise the infringing activities" because Plaintiff has failed to satisfy the second prong of the test for vicarious liability: an "obvious and direct financial interest." See El Ojo Aqua, 2014 WL 4700014, at *4 (finding that a similar allegation based on a liquor license neither suggests that an individual defendant "had anything to do with the decision to display the Event on [the establishment's] television screens," nor shows "that he had an obvious and direct financial interest in the exploitation of the Event" (footnote omitted)).

When other courts in this jurisdiction have imposed vicarious liability under similar circumstances, the plaintiff had typically made a stronger showing of financial gain. In some cases, the plaintiff showed direct financial gain, such as a cover charge on the night of the event. See, e.g., McAdam, 2015 WL 8483362, at *2 ($20 cover charge); 1400 Forest Ave. Rest., 2014 WL 4467774, at *3 ($8 cover charge). In other cases, the plaintiff presented strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast. See, e.g., Tellez, 2011 WL 6371521, at *2 (85 patrons viewed the broadcast at the bar); Mangos Steakhouse, 2014 WL 2879868, at *1 (up to 22 patrons were in the bar at any given time during the broadcast).

6

In the present action, Plaintiff has offered no such evidence. Plaintiff argues that, if not for the illegal interception, the five people who viewed the Event at the Defendant Establishment would have had to view the Event at a properly sublicensed establishment. (Compl. ¶ 18.) Plaintiff does not allege, however, that Defendants imposed a cover charge or a premium surcharge on its goods during the Event. Plaintiff's auditor counted the number of patrons present during the Event (Audit Report of Cosmo Lubrano), but did not specify whether those patrons made any purchases. Plaintiff provides no information about the Defendant Establishment beyond its name, LX Food Grocery Inc., and so the court is unable to draw any inferences as to whether people present for the broadcast of the Event would be required or expected to make any purchases. The court therefore finds that Plaintiff has not satisfied its burden of showing the "obvious and direct financial interest" required to establish vicarious liability with regard to the two Individual Defendants.

### C. Damages

Because Plaintiff has established liability with regard to the Defendant Establishment, Plaintiff is entitled to damages. Plaintiff seeks statutory damages of $4,475.75, enhanced damages of $8,949.50, litigation costs of $487.50, and pre-judgment interest. (Aff. in Supp. of Mot. for Default J. ("Aff.") (Dkt. 12) ¶¶ 18-22, 28-32.) The court finds that Plaintiff is entitled to a total award of $2,687.50, reflecting $2,200.00 in statutory and the stated litigation costs. The court declines to award enhanced damages or pre-judgment interest.

#### 1. Statutory Damages

The Act provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(C)(i)(II). Such awards are in the sound discretion of the court. Time Warner Cable of N.Y.C. v. Sanchez, No. 02-CV-5855

(GBD) (FM), 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). The court finds that Plaintiff is entitled to $2,200.00 in statutory damages.

Courts in this jurisdiction typically utilize two methodologies to calculate damages under Section 605(e)(C)(i)(II), and base the damages award on the higher of the two totals. McAdam, 2015 WL 8483362, at *4 (collecting cases). Under the "flat fee" method, the court calculates the amount that defendants would have paid in exchange for the right to show the Event legally—in this case, Plaintiff's licensing fee. Id. Under the "per-person" method, damages are equal to the amount an individual consumer would have paid to view the Event pay-per-view, multiplied by the number of consumers who watched the illegally transmitted Event. Id.

Plaintiff requests statutory damages of $4,474.75, consisting of $2,200.00 to compensate for the price Defendants would have had to pay to sublicense the Event, $274.75 to compensate for the price the five patrons would have had to pay to view the Event independently on pay-per-view,[2] and $2,000.00 to compensate for loss of goodwill. (Aff. ¶¶ 18-22.) The court finds that Plaintiff has correctly calculated the awards that are due under the flat-fee and per-person methods. The court is not, however, willing to grant Plaintiff's request for damages under both methods. The court will adhere to the standard practice in this jurisdiction of awarding the higher of the two totals—in this case, $2,200.00. The court also declines to award damages for goodwill, especially given that Plaintiff has neither explained how the $2,000.00 figure was calculated, nor cited a single source of legal authority.[3] (Pl.'s Mem. at 12-13.)

---

[2] Courts have generally applied a per-person residential fee of $54.95 when calculating statutory damages. McAdam, 2015 WL 8483362, at *4.

[3] The sole citation in this portion of Plaintiff's brief is a thirty-year-old Massachusetts case considering injunctive relief, with no discussion whatsoever of damages. (Pl.'s Mem. at 12 (citing Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1161 (D. Mass. 1986)).)

The court concludes that the appropriate statutory damages award for the alleged violation is $2,200.00, the amount yielded under the flat-fee method.

### 2. Enhanced Damages

"In any case in which the court finds that [a violation of the Act] was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). The court declines to award enhanced damages in this instance.

Courts in this jurisdiction have reached different conclusions as to whether impermissibly intercepting a televised broadcast is, by definition, a willful offense. Compare J & J Sports Prods. Inc. v. Big Daddy's Theme Palace, Inc., No. 14-CV-2765 (JG) (JMA), 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015) (adopting an R&R) ("[T]he intercepting and broadcasting of the event, without authorization, is a deliberate act, and therefore establishes willfulness."), with El Ojo Aqua, 2014 WL 4700014, at *6 ("An affirmative act can be done in good faith or bad," and the Act "explicitly recognizes that some violations . . . may be the result of an innocent mistake."). The court need not decide whether Defendants acted willfully in this instance; even if Plaintiff were able to show willfulness, the court finds that Plaintiff has failed to justify an award of enhanced damages.

"To determine whether willful conduct warrants an award of enhanced damages," courts typically consider: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." Big Daddy's Theme Palace, 2015 WL 58606, at *5 (citations and internal quotation marks omitted). The Complaint does not allege facts that support a

9

finding under any of these factors. To the extent that Defendants' failure to pay for a license constitutes "actual damages," that cost is already factored into Plaintiff's statutory damages award.

Plaintiff disputes the legitimacy of these factors on the grounds that they do not reflect the typical practices of those who impermissibly intercept broadcasts. (See Gagliardi Aff. (Ex B, Pl.'s Mem.) (Dkt. 11-2) ¶¶ 14-17.) Even if Plaintiff is correct, such rarity would merely underscore that discretionary enhanced damages should be reserved for particularly severe cases, where the defendant's conduct so departs from the norm that standard statutory damages are inadequate. The court thus declines to award enhanced damages.

3. Costs and Interest

Plaintiff requests $487.50 in costs and disbursements as well as 9% pre-judgment interest, calculated from September 14, 2013, on its damages award. (Aff. ¶¶ 28-32.)

a. *Costs and Disbursement*

The Act requires courts to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 48 U.S.C. § 605(e)(3)(B)(iii). Plaintiff does not request attorney's fees, but does request $487.50 in costs and disbursements. Pursuant to Section 605, the Court awards these fees.

b. *Pre-judgment Interest*

Section 605 does not provide for an award of pre-judgment interest. However, it is within the discretion of courts to award pre-judgment interest when "the awards were fair, equitable, and necessary to compensate the wronged party fully." Wickham Contracting Co. v. Local Union No. 3, IBEW, 955 F.2d 831, 835 (2d Cir. 1992). Courts should not award pre-judgment interest where "the statutory obligation on which interest is sought is punitive in nature." Id. at 834. Because "statutory damages under the Communications Act are analogous

10

to punitive damages," courts have generally declined to award pre-judgment interest pursuant to Communications Act violations. J & J Sports Prods. Inc. v. La Ruleta, No. 11-CV-4422 (NGG) (VVP), 2012 WL 3764062, at *5 (E.D.N.Y Aug. 7, 2012); see also, e.g., J & J Sports Prods. Inc. v. Chulitas Enter., No. 12-CV-3177 (JS) (WDW), 2014 WL 917262, at *6 (E.D.N.Y. Mar. 10, 2014); J & J Sports Prods. Inc. v. Sin Fronteras Rest., No. 09-CV-1873 (FB), 2010 WL 1565441, at *9 (E.D.N.Y. Feb. 23, 2010); J & J Sports Prods. Inc. v. Potions Bar & Lounge, No. 08-CV-1825 (FB) (CLP), 2009 WL 763624, at *8 (E.D.N.Y. Mar. 23, 2009). Accordingly, the Court declines to award prejudgment interest.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment (Dkt. 10) is GRANTED IN PART AND DENIED IN PART: the Motion is GRANTED with respect to Defendant LX Food Grocery Inc.'s liability under Section 605 of the Act, and DENIED with respect to Defendants Luis A. Reinoso and Altagracia Diaz. The court AWARDS Plaintiff damages and costs in the amount of $2,687.50, consisting of $2,200.00 in statutory damages and $487.50 in costs and disbursements. Any remaining claims in the Complaint that Plaintiff has abandoned in this Motion for Default Judgment are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated: Brooklyn, New York
November 22, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge